IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHINTAMANI MUEBLAS-CURTIS,　§
　　　　　　　　　　　　　　§
　　　　　　　Plaintiff,　　　§
　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　§　　　Civil Action No. 3:25-CV-1201-D
　　　　　　　　　　　　　　§
AMERICAN AIRLINES, INC,　　　§
　　　　　　　　　　　　　　§
　　　　　　　Defendant.　　　§

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Chintamani Mueblas-Curtis ("Mueblas-Curtis"), a 45 year old Asian female, against her former employer, defendant American Airlines, Inc. ("American"), alleging claims for discrimination, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the ADA Amendments Act of 2008 ("ADAAA"), and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Tex. Lab. Code Ann. § 451.001. American moves under Fed. R. Civ. P. 12(b)(6) to dismiss Mueblas-Curtis' claims under Title VII, the ADEA, the ADAAA, and the FMLA for failure to state a claim on which relief can be granted and to dismiss her Title VII-based hostile work environment claim for failure to exhaust administrative remedies. For the reasons that follow, the court grants American's motion in

part and denies it in part and also grants Mueblas-Curtis leave to replead in part.[1]

I

Mueblas-Curtis began working for American as a Premium Guest Services ("PGS") representative on May 27, 2019.[2] Less than one year later, on March 26, 2020, she sustained a work-related injury to her knee. Mueblas-Curtis filed for workers' compensation and worked with restrictions until her physician released her to full duty.

Almost precisely two years later, on March 28, 2022, Mueblas-Curtis suffered another work-related injury, this time to her shoulder. As a result, she worked with restrictions until her physician released her to full duty around February 21, 2023.

In July 2023 Mueblas-Curtis requested intermittent FMLA leave due to her work-related injury. American denied this request for the stated reason that she lacked qualifying hours. Mueblas-Curtis believes that this reason is inaccurate based on her pay and hours reported.

---

[1]Mueblas-Curtis filed on September 15, 2025 a "response to defendant's reply to plaintiff's response in opposition of defendant's partial motion to dismiss"—i.e., a surreply. American moves to strike the surreply, which was filed without leave of court. The court denies the motion without prejudice as moot because, even if the court were to consider the surreply, doing so would not alter the court's decision on American's partial motion to dismiss. *See, e.g.*, *Bautista v. PricewaterhouseCoopers LLP*, 2025 WL 2773813, at *2 (N.D. Tex. Sept. 29) (Fitzwater, J.), *appeal docketed*, No. 25-11122 (5th Cir. Oct. 7, 2025).

[2]The court recounts the background facts favorably to Mueblas-Curtis as the nonmovant. In deciding a Rule 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

Mueblas-Curtis was involved in several interpersonal conflicts during her employment with American. The first occurred in January 2023, when Ntombikie "Penny" Okon ("Okon"), a Nigerian coworker in her 30s, accused Mueblas-Curtis of "snitching" to Okon's manager when Okon violated company rules and policy by bringing a ConciergeKey guest and his family into the Admirals Club. When Okon confronted Mueblas-Curtis and asked if she had been the one who reported this to Okon's supervisor, Mueblas-Curtis denied speaking to the supervisor. Okon then followed Mueblas-Curtis as she was heading to her designated work area, and, in the presence of guests, yelled and pointed her finger at Mueblas-Curtis and accused her of reporting the incident. Okon departed the area, and, when she returned a few minutes later, said to Mueblas-Curtis: "snitches get stitches." Compl. (ECF No.1) at ¶ 4.09.

Mueblas-Curtis reported this threat to Steve Shielly, a Caucasian male in his 50s, who told Mueblas-Curtis to report it to Michelle Friedman ("Friedman"), a Hispanic female supervisor in her 30s. Mueblas-Curtis did report the threat to management and human resources, but no protective actions were taken, exacerbating her mental distress and causing panic attacks and fear at work.

On or about March 10, 2023, Mueblas-Curtis was involved in a confrontation with Friedman over how Mueblas-Curtis had handled rebooking passengers whose departure gate had changed for a flight to London, during which Friedman became irate with Mueblas-Curtis.

On or about June 10, 2023, Mueblas-Curtis was assigned to work the Flagship Lounge

and was the only PGS representative present.  Although she requested assistance, she was still left alone.  She handled the situation and got the guests taken care of, but it was a very stressful situation.

On or about June 21, 2023, Mueblas-Curtis had to stay an extra hour at work to ensure that guests were taken care of.  When she encountered Michael Acevedo ("Acevedo"), a Puerto Rican male in his 30s who was a coordinator in training, Acevedo directed her to assist in the Flagship Lounge.  Mueblas-Curtis was frustrated due to the scheduling issues and stated: "You guys really screwed up my schedule."  Compl. (ECF No. 1) ¶ 4.14.  A few weeks later, on July 6, 2023, Mueblas-Curtis was given a written Coach and Counseling reprimand for making this comment, despite the fact that the reprimand admitted she was exhausted due to the scheduling issues.

In August and September 2023, Mueblas-Curtis was assigned to work the Vehicle Ramp Transfer ("VRT"), which involves escorting ConciergeKey guests through a secure ramp.  Despite the training requirements of company policy and the union contract, Mueblas-Curtis had not received VRT training.  Nevertheless, management insisted that she perform this task.  When Mueblas-Curtis refused due to safety concerns and asked to switch assignments with someone who was qualified for VRT, the coordinators became frustrated with her.  This was a deliberate attempt by American to have Mueblas-Curtis violate policy and procedures, since they scheduled her to perform a task they knew she was not trained for.

In September 2023, Dennis Perkovic ("Perkovic"), an Eastern European Caucasian male, was issued a Coach and Counseling reprimand the first time he took food and

beverages without authorization. Shortly before Mueblas-Curtis' termination, Perkovic committed the same offense. For the repeat offense, Perkovic was given a Level One written warning. Both of these disciplinary actions were issued by Caleb Kelly-Richards ("Kelly-Richards"), a Caucasian male in his 20s.

On October 4, 2023, Mueblas-Curtis worked her regular shift followed by a voluntary 6½ hour shift. She took a break between shifts to eat and have coffee. Before her second shift, Mueblas-Curtis stopped by one of the clubs to get a single use toothbrush kit (valued at about one dollar) to use to brush her teeth before meeting guests. Mueblas-Curtis was terminated for unauthorized use of the dental kit—an amenity historically made available to all employees and routinely used without discipline. Kelly-Richards—the same manager who disciplined Perkovic for two offenses of unauthorized use of company property—terminated Mueblas-Curtis. Mueblas-Curtis was subjected to disparate treatment and harassment from supervisors, including retaliatory work assignments, coaching, and eventual termination on October 26, 2023.[3]

Mueblas-Curtis later filed this lawsuit, alleging that she was subjected to a hostile work environment; terminated because of her race, sex, age, color, country of national origin, and/or perceived disability; and terminated in retaliation for requesting FMLA leave and for

---

[3]In her complaint, Mueblas-Curtis alleges that she was terminated on October 24, 2023. In American's brief, it maintains that the Equal Employment Opportunity Commission ("EEOC") charge and American's records reflect that Mueblas-Curtis was terminated on October 26, 2023. American Br. (ECF No. 5) at 2 n.1. In her response brief, Mueblas-Curtis relies on October 26, 2023 as her termination date. P. Br. (ECF No. 18) at 6. Because both parties now rely on October 26, 2023 as the termination date, the court will do so as well.

instituting workers' compensation claims.

American now moves to dismiss all of Mueblas-Curtis' discrimination claims and her hostile work environment claim,[4] under Title VII; age discrimination claim, under the ADEA; perceived disability discrimination claim, under the ADAAA; and FMLA-based retaliation claim. Mueblas-Curtis opposes the motion,[5] which the court is deciding on the briefs, without oral argument.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To overcome a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

---

[4]As the court explains below, *see infra* note 6, to the extent that Mueblas-Curtis asserts a hostile work environment claim under statutes in addition to Title VII, American only moves for dismissal of the Title VII-based claim.

[5]American objects to Mueblas-Curtis' reliance on affidavits submitted with her response brief. D. Reply Br. (ECF No. 21) at 1-2. Because the affidavits are not the type of document that the court can consider in deciding a Rule 12(b)(6) motion, the court has not considered them in deciding American's motion. The court therefore overrules this objection without prejudice as moot.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Failure to exhaust administrative remedies is an affirmative defense. *See, e.g.*, *Clemmer v. Irving Indep. Sch. Dist.*, 2015 WL 1757358, at *3 (N.D. Tex. Apr. 17, 2015) (Fitzwater, J.) (Title VII exhaustion is an affirmative defense), *aff'd*, 689 Fed. Appx. 379 (5th Cir. 2017). To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In other words, the movant is not entitled to dismissal under Rule 12(b)(6) based on the affirmative defense unless the nonmovant has "pleaded [herself] out of court by admitting to all of the elements of the defense." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson*, 2011 WL 4100958, at *3). But "even if not referenced

- 7 -

in the complaint and central to [Mueblas-Curtis'] claims, the Court can take judicial notice

of the [Equal Employment Opportunity Commission ('EEOC')] charge as a public record."

*West v. R&K Enter. Sols.*, 2024 WL 3891533, at *5 (N.D. Tex. July 19, 2024) (Horan, J.),

*rec. adopted*, 2024 WL 3891838 (N.D. Tex. Aug. 21, 2024) (Fish, J.).

III

The court considers first whether American is entitled to dismissal of Mueblas-Curtis'

Title VII-based hostile work environment claim due to her failure to exhaust administrative

remedies.[6]

A

"Employment discrimination plaintiffs must exhaust administrative remedies before

pursuing claims in federal court.  Exhaustion occurs when the plaintiff files a timely charge

with the EEOC and receives a statutory notice of right to sue."  *Taylor v. Books A Million,*

*Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).  "It is well settled that courts may not entertain

claims brought under Title VII as to which an aggrieved party has not first exhausted [her]

administrative remedies by filing a charge of discrimination with the EEOC."  *Kretchmer v.*

---

[6]In her complaint, Mueblas-Curtis alleges that her hostile work environment claim is based "on one or more of the statutes identified in Section VI, VII, VII [sic], IX, and X." Compl. (ECF No. 1) at ¶ 11.01.  She also asserts that she "was subjected to a hostile work environment and was terminated . . . because of her race, sex, age, color, country of national origin, perceived disability, in retaliation for requesting FMLA, and in retaliation for instituting workers' compensation claims. *Id.* at ¶ 4.22.  To the extent that Mueblas-Curtis is alleging a hostile work environment under a statute other than Title VII, American is moving to dismiss only a Title VII-based hostile work environment claim for failure to exhaust.  *See* D. Brief (ECF No. 5) at 4.

*Eveden, Inc.*, 2009 WL 854719, at *3 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (citing *Taylor*, 296 F.3d at 378-79). "In deferral states such as Texas, an aggrieved party must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful practice occurred." *Baldwin v. Kenco Logistics Servs., L.L.C.*, 2022 WL 675808, at *2 (N.D. Tex. Mar. 7, 2022) (Fitzwater J.) (citing 42 U.S.C. § 2000e-5(e)(1)). A "discrete retaliatory or discriminatory act 'occur[s],'" for purposes of the exhaustion requirement, "on the day that it 'happen[s].'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). "A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.*; *see also id.* at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire . . . ." *Id.* at 114.

B

It undisputed that Mueblas-Curtis filed her EEOC charge on May 6, 2024. Unless a continuing violation theory applies, Mueblas-Curtis' claims can only be based on incidents that occurred between July 11, 2023 (i.e., 300 days before she filed her EEOC charge) and October 26, 2023 (the date of her termination). While American acknowledges that the majority of Mueblas-Curtis' claims appear to be based on her termination, it maintains that her hostile work environment claim relies entirely on conduct that occurred before July 11, 2023. According to American, the only incidents that Mueblas-Curtis specifies in her claim that occurred within the 300-day window are her assignment to VRT without sufficient

- 9 -

training and her taking a company-owned toothbrush, the incident in question that led to her termination.

A hostile work environment claim must be supported by harassment "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Walton-Lentz v. Innophos, Inc.*, 476 Fed. Appx. 566, 570 (5th Cir. 2012) (per curiam) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (alteration in original and internal quotation marks omitted). The limited discrete acts of discrimination that Mueblas-Curtis relies on do not establish a hostile work environment.[7]

Accordingly, to establish that the court can consider events that occurred outside the 300-day window, Mueblas-Curtis relies on a continuing violation theory.

> To demonstrate a continuing violation, plaintiffs must show that (1) the "separate acts" are related, (2) "the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it," and (3) that the doctrine is tempered by the court's equitable powers, so applying the continuing violation doctrine must "honor Title VII's remedial purpose."

*McWilson v. Bell Textron Inc.*, 2024 WL 3585615, at *7 (N.D. Tex. July 30, 2024) (Pittman, J.) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 329 (5th Cir. 2009)).

---

[7]In *Walton-Lentz* the Fifth Circuit noted that merely claiming on the EEOC form that the plaintiff suffered discrimination because of her age does not mean a "hostile-work-environment claim could [] 'reasonably be expected to grow out of' Walton–Lentz' EEOC charges." *Walton-Lentz*, 476 Fed. Appx. at 570 (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). The work environment must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (internal quotation marks omitted)).

Mueblas-Curtis fails to allege in her EEOC charge or her complaint how her termination based on taking the company toothbrush is in any way related to the prior incidents on which she relies. For example, the coworker who allegedly caused her anxiety (Okon) is not the person who went unpunished for taking food from the concierge lounge. The supervisor who terminated Mueblas-Curtis' employment (Kelly-Richards) is not the same supervisor who failed to "adequately" punish Okon for making threatening comments. The EEOC charge would not have placed American on notice that Mueblas-Curtis was complaining of a hostile work environment. Because the pleadings fail even to suggest a connection between these incidents, and because the EEOC complaint fails to place American on notice that the EEOC investigation could reasonably grow to include hostile work environment claims, the court holds that Mueblas-Curtis has not demonstrated that she timely exhausted her hostile work environment claim based on a continuing violation theory. The court therefore grants American's motion to dismiss Mueblas-Curtis' Title VII-based hostile work environment claim due to her failure to timely exhaust administrative remedies. *See Walton-Lentz*, 476 Fed. Appx. at 569-70 (5th Cir. 2012).

IV

The court now considers Mueblas-Curtis' Title VII claims for sex, race, national origin, and color discrimination.

A

Title VII prohibits intentional discrimination by a covered employer "against any individual with respect to [her] compensation, terms, conditions, or privileges of

- 11 -

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

"Title VII discrimination can be established through direct or circumstantial evidence." *Appel v. Inspire Pharms., Inc.*, 428 Fed. Appx. 279, 281 (5th Cir. 2011) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). When the plaintiff has not presented direct evidence of employment discrimination, she must make a prima facie showing of discrimination by establishing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *See id.*; *see also McDonnell Douglas Co. v. Green*, 411 U.S. 792, 802 (1973).[8]

_____

[8]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g.*, *Chhim v. Univ. of Tex. at Aus.*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To defeat American's motion to dismiss, however, Mueblas-Curtis must plausibly plead the ultimate elements of her Title VII claim. *See Chhim*, 836 F.3d at 470. And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the McDonnell Douglas framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

"[F]or a plaintiff to show disparate treatment, she must demonstrate 'that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (first alteration not in original) (quoting *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam)). "[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Id.* (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000)).

B

As a 45 year old Asian female, Mueblas Curtis is a member of protected classes based on her sex, race, national origin, and color. American does not contend that Mueblas Curtis was unqualified for her position, considering that she had worked for several years as a PGS representative, and, according to uncontested allegations in her complaint, received commendations for her work. Nor does American dispute that Mueblas-Curtis suffered an adverse employment action: her termination.

Therefore, the only element that Mueblas-Curtis must satisfy to plausibly plead a discrimination claim based on the *McDonnell Douglas* standard is whether there was another similarly-situated employee who was treated more favorably in nearly identical circumstances. She does this by pointing to Perkovic, an Eastern European Caucasian male, whom Kelly-Richards reprimanded twice for taking food from the guest lounge on two

- 13 -

separate occasions, but was not terminated.  Taking the allegations of Mueblas-Curtis' complaint as true, Perkovic was similarly situated to Mueblas-Curtis, but was not terminated for conduct that was nearly identical to hers.

American maintains that Perkovic is not "similarly situated" because he and Mueblas-Curtis committed different infractions.  One of the cases American cites in support is *Bryant v. Compass Group USA Inc.*, 413 F.3d 471 (5th Cir. 2005).  In *Bryant* the Fifth Circuit held that "the alleged theft of alcohol, party decorations, and table decorations is not the same as stealing money from a client's gift table at a catered event." *Id.* at 478.  Relying on *Bryant*'s reasoning, American says that Perkovic and Mueblas-Curtis are not similarly situated because Perkovic took perishable items and Mueblas-Curtis took a *non*perishable item.  But the holding that American relies on from *Bryant* was based on the evidence adduced at a jury trial, not on a ruling at the Rule 12(b)(6) pleading stage.  So even if the difference between a perishable and *non*perishable item is determined to be material on motion for summary judgment or at trial, it is not so apparent at the Rule 12(b)(6) stage as to preclude the court from drawing the reasonable inference that Perkovic and Mueblas-Curtis are similarly situated and that their circumstances are nearly identical.

Considering the allegations of the complaint, including that the same supervisor (Kelly-Richards) who terminated Mueblas-Curtis disciplined Perkovic less severely, the court concludes that American is not entitled under Rule 12(b)(6) to dismissal of Mueblas-Curtis' Title VII-based claims for discrimination based on sex, race, national origin, and color.  The court thus denies American's 12(b)(6) motion to dismiss these claims.

- 14 -

V

The court now considers Mueblas-Curtis' claim under the ADEA for age discrimination.

A

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (internal quotations omitted) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). Where, as here, a plaintiff alleges discrimination under the ADEA based on circumstantial evidence, the court can use the *McDonnell Douglas* framework as a helpful reference when determining whether a plaintiff has plausibly alleged the ultimate elements of her claim. *See Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

Under *McDonnell Douglas* a plaintiff alleging only circumstantial evidence must establish a prima facie case of age discrimination by showing that (1) she was within the protected class (i.e., she was over 40 years old) at the time of the challenged action; (2) she was qualified for the position; (3) the defendant discharged, refused to hire, or otherwise discriminated against her; and (4) (i) she was replaced by someone outside the protected class, (ii) she was replaced by someone younger, or (iii) the discharge, refusal to hire, or

- 15 -

other discrimination was otherwise because of her age. *Anderton v. Dall. Indep. Sch. Dist.*, 2024 WL 3687101, at *5 (N.D. Tex. Aug. 6, 2024) (Fitzwater, J.) (citing *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321-22 (5th Cir. 2021)). "Although a complaint need not contain facts establishing a prima facie case, the plaintiff must plead more than an 'unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Norsworthy*, 70 F.4th at 336).

B

Mueblas-Curtis does not allege Perkovic's age in her complaint; therefore, she has failed to plausibly plead that she was replaced by someone younger or outside of the protected age class. Her sole claim is that the discharge was because of her age, for which she similarly provides no support. Nothing in the pleadings indicates that she was treated differently because of her age, no direct or indirect comments about her age are alleged, and the "complaint fails to allege sufficient facts for the court to draw the reasonable inference that [Mueblas-Curtis] was terminated based on her age." *Anderton*, 2024 WL 3687101, at *6. The court therefore grants American's motion to dismiss Mueblas-Curtis' age discrimination claim under the ADEA.

- 16 -

VI

The court now considers Mueblas-Curtis' discrimination claim under the ADAAA based on her perceived disability.

A

"To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that [s]he has a disability; (2) that [s]he was qualified for the job; [and] (3) that [s]he was subject to an adverse employment decision on account of [her] disability." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). Unlike the Title VII claims discussed above, no comparator is needed. *Id.*

For the first element, the ADAAA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Willis v. Noble Env't Power, LLC*, 143 F.Supp.3d 475, 479 (N.D. Tex. 2015) (Robinson, J.) (quoting 42 U.S.C. § 12102(1)). To meet the requirement of perceived disability, a plaintiff must only show that she has suffered an adverse employment action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §12102(3)(A). It is important to note however, that the impairment must be more than transitory or minor.[9]

_____

[9]"A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

B

Contrary to American's arguments, in perceived disability cases under the ADAAA, there is no need for Mueblas-Curtis to plausibly plead that she was substantially limited in major life activities by her disability.[10]  She "need only show that her 'employer perceived [her] as having an impairment' and that it discriminated against her on that basis."  *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (citing *Mendoza v. City of Palacios*, 962 F.Supp.2d 868, 871 (S.D. Tex. 2013)).

To satisfy the first element, Mueblas-Curtis alleges that the perceived impairments are the workplace injuries she suffered in 2020 and 2022.  Although her response also states that her disability included panic attacks and anxiety, she does not allege in her complaint that American was aware of her mental distress, panic attacks, or fear at work.  Although the court can draw the reasonable inference that American was likely aware of her injuries due to the workers' compensation claims and work restrictions imposed by physicians, Mueblas-Curtis has not plausibly pleaded that American regarded her as impaired at the time she was terminated.

Even if Mueblas-Curtis had plausibly pleaded that American perceived her as impaired, she has failed to plausibly plead a link between her termination and the perceived

---

[10]The ADAAA overrules prior authority "requiring a plaintiff to show that the employer regarded him or her as being substantially limited in a major life activity."  *Burton v. FreescaleSemiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (citing *Dube v. Tex. Health & Human Servs. Comm'n*, 2012 WL 2397566, at *3 (W.D. Tex. June 25, 2012)).

impairments, or to plausibly plead that she was terminated because of her perceived disability. The workplace injury to her knee occurred on March 26, 2020, and the injury to her shoulder occurred on March 28, 2022. Her termination did not occur until October 2023, and she has not plausibly pleaded any connection between them. Mueblas-Curtis even acknowledges that American allowed her to work with restrictions after she was injured, and that she filed workers' compensation claims based on her injuries. This only enables the court to draw the reasonable inference that there was no discrimination based on any perceived disability.

Even if the court assumes that all the facts alleged in Mueblas-Curtis' complaint are true, she has failed to plausibly plead a prima facie case for discrimination under the ADAAA. Nothing ties her termination in 2023 to injuries that occurred in 2020 and 2022. Without something to connect the 2023 termination to her previously-suffered injuries, and without sufficiently-pleaded facts to establish how American perceived her injuries, her complaint fails to state a claim on which relief can be granted. Accordingly, the court grants American's motion to dismiss Mueblas-Curtis' ADAAA claim.

VII

The court now considers Mueblas-Curtis' FMLA-based retaliation claim.

A

To successfully establish a claim under the FMLA, "the plaintiff must allege that '(1) [s]he is protected under the FMLA; (2) [s]he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not

requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave.'" *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (citing *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)). Although it is not necessary for the plaintiff to plead all the elements of a prima facie case, "an FMLA retaliation claim does require [Mueblas-Curtis] to show a causal link between her FMLA leave and the adverse action." *Luebano v. Off. Depot, L.L.C.*, 2023 WL 4249268, at *5 (5th Cir. June 29, 2023) (per curiam) (citing *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017)). This is not a high standard for a Rule 12(b)(6) motion; Mueblas-Curtis need only plead adequate facts that "allow [the court] to draw a reasonable causation inference." *Id.* (citing *Nix v. Major League Baseball*, 62 F.4th 920, 928 (5th Cir. 2023)). This does not require that Mueblas-Curtis was immediately terminated in response to requesting FMLA leave, but the time between the termination and the FMLA request must be very short. *See id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam)).

B

Mueblas-Curtis has failed to plead sufficient facts that, accepted as true, plausibly plead causation. The only link is temporal. She requested FMLA leave, which was denied in July 2023 due to an alleged lack of qualifying hours. She was terminated in October 2023 based on entirely unrelated conduct. There is no allegation that the supervisor who denied the FMLA request is the same one who terminated her based on the toothbrush incident, and she has failed to plausibly plead other pertinent facts, such as that American managers reacted negatively to her request for FMLA leave. Because Mueblas-Curtis has failed to

plausibly plead a connection between her FMLA request and her later termination, the court grants American's motion to dismiss her FMLA-based retaliation claim.

VIII

The court has partially granted American's Rule 12(b)(6) motion to dismiss. "[T]he court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead[.]" *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 707 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.)). For the reasons explained, Mueblas-Curtis' age discrimination claim under the ADEA, disability discrimination claim under the ADAAA, and FMLA-based retaliation claim are dismissed. Accordingly, with the exception noted next, the court will allow Mueblas-Curtis to replead her claims. Mueblas-Curtis must file her amended complaint no later than 28 days after the date this memorandum opinion and order is filed.

The court will not permit Mueblas-Curtis to replead her hostile work environment claim under Title VII because she has failed to exhaust this claim and she cannot cure this failure no matter how many more tries she is given to replead this claim. *See Clemmer v. Irving Indep. Sch. Dist.*, 2014 WL 2475924, at *5 n.10 (N.D. Tex. June 3, 2014) (Fitzwater, C.J.) (declining to allow plaintiffs to replead a claim where relief sought was unavailable).

*    *    *

American's motion for partial dismissal under Rule 12(b)(6) is granted in part and denied in part, and Mueblas-Curtis is granted leave to replead within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

October 29, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 22 -